QUINN EMANUEL URQUHART & SULLIVAN, LLP
  Shon Morgan (Bar No. 187736)
  (shonmorgan@quinnemanuel.com)
  John W. Baumann (Bar No. 288881)
  (jackbaumann@quinnemanuel.com)
  865 South Figueroa Street, 10th Floor
Los Angeles, California  90017-2543
Telephone:  (213) 443-3000
Facsimile:   (213) 443-3100

Attorneys for Defendant Ancestry.com Operations Inc.

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARTA CARRERA CHAPPLE, individually and on behalf of all others similarly situated;<br><br>Plaintiff,<br><br>vs.<br><br>ANCESTRY.COM OPERATIONS, INC., a Virginia corporation, and DOES 1-50, inclusive,<br><br>Defendants. | CASE No. 3:20-cv-01456-LAB-DEB<br><br>**DEFENDANTS ANCESTRY.COM OPERATIONS INC.'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ITS MOTION TO COMPEL ARBITRATION;**<br><br>Hearing Date: October 13, 2020<br>Hearing Time: 11:15 a.m.<br>Courtroom:  14A<br>Judge:  Hon. Larry Alan Burns<br><br>**ORAL ARGUMENT REQUESTED** |

## **TABLE OF CONTENTS**

**Page**

PRELIMINARY STATEMENT ................................................................................ 1

BACKGROUND ........................................................................................................ 1

LEGAL STANDARD ................................................................................................. 5

ARGUMENT .............................................................................................................. 6

I.    ANY QUESTIONS OF ARBITRABILITY MUST BE DECIDED BY AN ARBITRATOR ................................................................................ 6

II.    THOUGH NOT AN ISSUE FOR THE COURT, PLAINTIFF ENTERED INTO A VALID ARBITRATION AGREEMENT THAT CLEARLY COVERS THE CLAIMS AT ISSUE ............................................. 8

III.    THOUGH NOT AN ISSUE FOR THE COURT, ARBITRATION MAY NOT PROCEED ON A CLASS BASIS ............................................. 10

CONCLUSION ......................................................................................................... 11

# TABLE OF AUTHORITIES

**Page**

### Cases

*Amirhamzeh v. Wells Fargo Bank, N.A.*,
    2014 WL 12610227 (N.D. Cal. Oct. 31, 2014) ................................................. 9

*AT & T Techs., Inc. v. Commc'ns Workers of Am.*,
    475 U.S. 643 (1986) ......................................................................................... 6

*Bitstamp Ltd. v. Ripple Labs Inc.*,
    2015 WL 4692418 (N.D. Cal. Aug. 6, 2015) ................................................... 7

*Brennan v. Opus Bank*,
    796 F.3d 1125 (9th Cir. 2015) ......................................................................... 5

*Chiron Corp. v. Ortho Diagnostic Sys., Inc.*,
    207 F.3d 1126 (9th Cir. 2000) ......................................................................... 8

*Collett v. Ancestry.com*,
    Case No. 19-cv-03743-RS ........................................................................... 4, 8

*Epic Sys. Corp. v. Lewis*,
    138 S. Ct. 1612 (2018) ................................................................................... 10

*Fteja v. Facebook, Inc.*,
    841 F. Supp. 2d 829 (S.D.N.Y. 2012) ............................................................. 9

*Zaltz v. JDATE*,
    952 F. Supp. 2d 439 (E.D.N.Y. 2013) ............................................................. 9

*Henry Schein, Inc. v. Archer & White Sales, Inc.*,
    139 S. Ct. 524 (2019) ....................................................................................... 7

*Howsam v. Dean Witter Reynolds, Inc.*,
    537 U.S. 79 (2002) ........................................................................................... 7

*Hughes v. Ancestry.com*,
    580 S.W.3d 42 (2019) .............................................................................. 4, 5, 8

*In re Holl*,
    925 F.3d 1076 (9th Cir. 2019) ......................................................................... 9

*Kim v. Tinder, Inc.*,
    2018 WL 6694923 (C.D. Cal. July 12, 2018) ................................................. 5

*Lakhan v. U.S. Sec. Assocs., Inc.*,
    2019 WL 175043 (C.D. Cal. Jan. 11, 2019) .................................................... 7

*Lamps Plus, Inc. v. Varela*,
    139 S. Ct. 1407 (2019) ................................................................................... 10

*Mason v. Midland Funding LLC*,
  2018 WL 3702462 (N.D. Ga. May 25, 2018) .................................................. 9

*Moses H. Cone Memorial Hosp. v. Mercury Const. Corp.*,
  460 U.S. 1 (1983) ..................................................................................... 5, 6, 10

*Prima Paint Corp. v. Flood & Conklin Mfr. Co.*,
  388 U.S. 395 (1967) ............................................................................................ 6

*Rent-A-Center, West, Inc. v. Jackson*,
  561 U.S. 63 (2010) .......................................................................................... 6, 7

*Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*,
  559 U.S. 662 (2010) ..................................................................................... 10, 11

*Wiseley v. Amazon.com, Inc.*,
  709 F. App'x 862 (9th Cir. 2017) ....................................................................... 9

*Zaltz v. JDATE*,
  952 F. Supp. 2d 439 (E.D.N.Y. 2013) ................................................................ 9

**Statutes**

9 U.S.C § 1 ................................................................................................................. 5

9 U.S.C. § 2 ................................................................................................................ 5

9 U.S.C. § 3 ................................................................................................................ 6

9 U.S.C. §§ 1-16 ........................................................................................................ 5

## PRELIMINARY STATEMENT

This dispute does not belong in court. Plaintiff expressly agreed to arbitrate any grievances related to the services she purchased from Ancestry. The terms of her arbitration agreement are conspicuous, fair, and reached through a process and on substantive terms that courts have held must be enforced to effectuate the purposes of the Federal Arbitration Act. Plaintiff's arbitration agreement also expresses a clear and unmistakable intent to commit issues of arbitrability to the arbitrator. Thus, to the extent plaintiff contends her claims are not subject to the arbitration agreement for any reason, this issue must be decided in arbitration.

There can be no serious dispute this case belongs in arbitration—in fact, both the United States District Court for the Northern District of California and a state appellate court recently enforced Ancestry's arbitration agreement and compelled two putative class action lawsuits to arbitration. The plaintiffs in those actions followed the same steps to agree to arbitrate their claims, and the clear and unmistakable agreement to commit issues of arbitrability to the arbitrator (on which the courts based their decisions) also appears in plaintiff's agreement here. This Court should likewise enforce plaintiff's agreement and compel arbitration of her claims.

## BACKGROUND

When plaintiff activated her Ancestry.com account in February 2020, she affirmatively agreed to the binding arbitration clause set forth in Ancestry's Terms and Conditions. Declaration of Eric Allen ("Allen Decl.") at ¶¶ 3-6, Exs. 1-2.

**Affirmative Consent To Arbitration.** Plaintiff registered for an Ancestry.com account in February 2020. Complaint at ¶ 17. To create her online account, plaintiff provided her full name and email address and created a password. Allen Decl. at ¶ 3. After entering that information, but before plaintiff could click "Save and continue" to create her account, Ancestry advised plaintiff of the following:

> By clicking "Save and continue" below, you agree to the Ancestry Terms and Conditions and Privacy Statement and agree Ancestry may contact you via email about their products and services, such as family tree hints and updates about promotional offers and events, that help unlock your past to inspire your future. You can unsubscribe or customize your email settings at any time.

*Id.* at ¶¶ 4-5, Ex. 1.  This notice was conspicuously located directly above the "Save and continue" button and was written in easy-to-read, 13-point font.  *Id.*  The notice also contained a visible hyperlink to the Ancestry Terms and Conditions.  *Id.*  The webpage plaintiff visited in February 2020 appeared as follows:



*Id.*  Plaintiff clicked "Save and continue" to create her account, thereby agreeing to the Ancestry Terms and Conditions.  *See id.* at ¶¶ 5-6. Ex. 2.

**Prominent Heading and Clear Terms.**  The Ancestry Terms and Conditions to which plaintiff agreed contain a separate section with a bolded heading entitled

"**Dispute Resolution, Arbitration and Class Action Waiver**." *Id.* at ¶ 6, Ex. 2 at ¶ 13 (emphasis in original).  In that section is a further, bolded provision that informed plaintiff to "**PLEASE READ THIS SECTION CAREFULLY. IT AFFECTS YOUR LEGAL RIGHTS, INCLUDING YOUR RIGHT TO FILE A LAWSUIT IN COURT.**" *Id.* (emphasis in original).

**Broad Scope With Limited Exceptions.**  Plaintiff's arbitration agreement broadly covers "any dispute between us," with three limited exceptions that do not apply here.  *See id.*  First, plaintiff's arbitration agreement gives her the right to "assert your dispute, if it qualifies, in small claims court." *Id.*  Second, plaintiff is permitted to "bring a claim to the attention of a relevant federal, state, or local agency that may seek relief against us on your behalf." *Id.*  Third, both plaintiff and Ancestry are permitted to "bring a suit in court in the state of Utah only for a claim of infringement or other misuse of intellectual property rights." *Id.*

**Delegation of Arbitrability Disputes.**  Plaintiff's arbitration agreement also contains a clear expression of intent to delegate issues of arbitrability to the arbitrator.  Plaintiff's agreement provides "[t]he arbitrator, and not any federal, state, or local court or agency, shall have exclusive authority to resolve all disputes arising out of or relating to the interpretation, applicability, enforceability, or formation of these Terms or the Privacy Statement, including but not limited to any claim that all or any part of these Terms or Privacy Statement is void or voidable, whether a claim is subject to arbitration, or the question of waiver by litigation conduct." *Id*.

**Arbitration Before JAMS And Payment Of Fees.**  Plaintiff's agreement requires arbitration to be "conducted by JAMS in accordance with the" applicable JAMS rules, and broadly empowers the arbitrator "to grant whatever relief would be available in a court under law or in equity." *Id.*  Plaintiff's agreement also limits plaintiff's payment to only $250 to initiate an arbitration, with "all other fees invoiced by JAMS, including filing fees and arbitrator and hearing expenses" paid by Ancestry. *Id.*

**Class Action Waiver.** Plaintiff's arbitration agreement also explicitly sets forth the rights plaintiff and Ancestry waived by agreeing to arbitrate. Her agreement states, in bolded text, that "**You and Ancestry each agree that each party may only resolve disputes with the other on an individual basis and may not bring a claim as a plaintiff or a class member in a class, consolidated, or representative action.**" *Id.* (emphasis in original).

**The *Collett* Litigation.** In a recent case in the United States District Court for the Northern District of California—*Collett v. Ancestry.com*, Case No. 19-cv-03743-RS—plaintiffs Lori Collett and Robert Jacobs similarly sought to avoid their agreements to arbitrate disputes with Ancestry. As here, plaintiffs in the *Collett* action agreed to arbitrate their claims by clicking a "Continue" button to create their Ancestry accounts after receiving the notice of agreement to Ancestry's Terms and Conditions. *Collett*, Case No. 19-cv-03743-RS, ECF No. 26 at 2, 4 ("In order to use Ancestry's services, plaintiffs each registered for Ancestry accounts at the Ancestry.com website. They provided their names and email addresses, created passwords, and accepted Ancestry's Terms and Conditions . . . Plaintiffs affirmatively agreed to the Terms when they registered their accounts[.]"). The court determined plaintiffs' terms contained explicit agreements "that an arbitrator would decide issues of arbitrability," and, accordingly, granted Ancestry's motion to allow an arbitrator to rule on plaintiffs' challenges. *Id.* at 4, 6.

**The *Hughes* Litigation**. In another recent action filed in the Circuit Court of Jackson County, Missouri, plaintiffs Tina Parsley Hughes and Jose Cordada similarly sought to avoid their agreements to arbitrate and brought putative class claims against Ancestry. *See Hughes v. Ancestry.com*, 580 S.W.3d 42 (2019). Like plaintiff here and in *Collett*, the plaintiffs in the *Hughes* action agreed to arbitrate their claims by clicking the "Continue" button to create their Ancestry accounts after receiving the notice of agreement to Ancestry's Terms and Conditions. *Id.* at 45. On May 28, 2019, the Missouri Court of Appeals, assessing the agreements under

the Federal Arbitration Act ("FAA"), "order[ed] the parties to proceed to arbitration[.]" *Id.* at 49.  The court held plaintiffs' arbitration agreements contained a valid and enforceable "delegation provision," requiring any "issues of arbitrability" to be addressed by the arbitrator.  *Id.* at 47-49.  Though plaintiffs raised a variety of arguments challenging their arbitration agreements, the court rejected plaintiffs' contention those arguments were sufficient to undermine the validity of the delegation provision and compelled plaintiffs to arbitration to allow the arbitrator to address any issues of arbitrability in the first instance.  *Id.* at 46 n. 5 & 49.

## LEGAL STANDARD

The FAA governs the enforcement of arbitration clauses in commercial contracts.[1]  9 U.S.C. §§ 1-16.  Section 2 of the FAA states:

> A written provision in . . . a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof, or an agreement in writing to submit to arbitration an existing controversy arising out of such contract, transaction, or refusal, shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

9 U.S.C. § 2.  "Section 2 is a congressional declaration of a liberal federal policy favoring arbitration agreements . . . ." *Moses H. Cone Memorial Hosp. v. Mercury Const. Corp.*, 460 U.S. 1, 24 (1983).  "The Arbitration Act establishes that, as a

---

[1] The FAA applies where, as here, the arbitration agreement appears in a contract involving interstate commerce.  *See* 9 U.S.C § 1; Complaint at ¶ 2 (alleging plaintiff is a resident of California); ECF No. 1-2 at ¶ 10 (Ancestry is a Virginia corporation with its principal place of business in Utah).  Under the arbitration agreement here, the parties also explicitly agreed the FAA applies.  Allen Decl. at ¶ 6, Ex. 2 at ¶ 13 ("You and Ancestry agree that these Terms affect interstate commerce and that the Federal Arbitration Act governs the interpretation and enforcement of these arbitration provisions.").  "An FAA choice-of-law provision in an arbitration agreement is enforceable." *Kim v. Tinder, Inc.*, 2018 WL 6694923, at *2 (C.D. Cal. July 12, 2018) (citing *Brennan v. Opus Bank*, 796 F.3d 1125, 1129-31 (9th Cir. 2015)).

matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or any allegation of waiver, delay, or a like defense to arbitrability." *Id.* at 24-25. "[I]t has been established that where the contract contains an arbitration clause, there is a presumption of arbitrability in the sense that an order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage." *AT & T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 650 (1986) (quotation, citation and alterations omitted).

Pursuant to Section 3 of the FAA, if a suit is brought in court:

> [U]pon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement . . . .

9 U.S.C. § 3. Once a court determines a claim is subject to arbitration, it lacks authority to address the merits of that claim. *See Prima Paint Corp. v. Flood & Conklin Mfr. Co.*, 388 U.S. 395, 400 (1967).

## ARGUMENT

### I. ANY QUESTIONS OF ARBITRABILITY MUST BE DECIDED BY AN ARBITRATOR

The Supreme Court has recognized "that parties can agree to arbitrate 'gateway' questions of 'arbitrability,' such as whether the parties have agreed to arbitrate or whether their agreement covers a particular controversy." *Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. 63, 69 (2010). "An agreement to arbitrate a gateway issue is simply an additional, antecedent agreement the party seeking arbitration asks the federal court to enforce, and the FAA operates on this additional arbitration agreement just as it does on any other." *Id.* at 70. If the parties have

"clearly and unmistakably" agreed that questions of arbitrability must be decided by the arbitrator, such provisions must be enforced. *See Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83 (2002) (internal quotation and citation omitted). As the United States Supreme Court recently held, "[w]hen the parties' contract delegates the arbitrability question to an arbitrator, a court may not override the contract." *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 139 S. Ct. 524, 529 (2019). Rather, "[i]n those circumstances, a court possesses no power to decide the arbitrability issue." *Id.*

Here, plaintiff's arbitration agreement clearly and unmistakably delegates issues of arbitrability to the arbitrator. Allen Decl. at ¶ 6, Ex. 2 at ¶ 13 ("The arbitrator, and not any federal, state, or local court or agency, shall have exclusive authority to resolve all disputes arising out of or relating to the interpretation, applicability, enforceability, or formation of these Terms . . . including but not limited to any claim that all or any part of these Terms . . . is void or voidable, whether a claim is subject to arbitration, or the question of waiver by litigation conduct.").[2] Courts have repeatedly held the language contained in plaintiff's arbitration agreement evinces such an intent. *See, e.g., Rent-A-Ctr.*, 561 U.S. at 66 (delegation provision stated "[t]he Arbitrator, and not any federal, state, or local court or agency, shall have exclusive authority to resolve any dispute relating to the interpretation, applicability, enforceability or formation of this Agreement including, but not limited to any claim that all or any part of this Agreement is void or voidable."); *Lakhan v. U.S. Sec. Assocs., Inc.*, 2019 WL 175043, at *6 (C.D. Cal.

---

[2] In addition to the explicit delegation agreements, plaintiff's agreement also incorporates the JAMS rules, which separately evinces the "clear and unmistakable" intent to commit arbitrability issues to the arbitrator. *See id.*; *Bitstamp Ltd. v. Ripple Labs Inc.*, 2015 WL 4692418, at *5 (N.D. Cal. Aug. 6, 2015) (holding that incorporation of the JAMS rules "overcame the default rule and assigned the arbitrability question to the arbitrator.").

Jan. 11, 2019) (holding agreement that required an arbitrator to "resolve any issue relating to the interpretation, formation or enforceability of this Agreement, or any issue relating to whether a Claim is subject to arbitration under this Agreement" was "similar to others that courts in this District have determined clearly and unmistakably provide for threshold issues of arbitrability to be determined by an arbitrator.") (citation omitted).

Because plaintiff "clearly and unmistakably" evinced her intent to delegate questions of arbitrability to the arbitrator, to the extent she challenges the existence, scope or validity of her agreement, those issues must be decided by the arbitrator. This holding would be entirely consistent with the recent *Collett* and *Hughes* decisions, which rejected all of plaintiffs' challenges to Ancestry's arbitration agreements on the basis that none of those attacks undermined the validity of the separate delegation agreement. *Collett*, Case No. 19-cv-03743-RS, ECF No. 26; *Hughes*, 580 S.W.3d at 46 n. 5 & 49.

## II. THOUGH NOT AN ISSUE FOR THE COURT, PLAINTIFF ENTERED INTO A VALID ARBITRATION AGREEMENT THAT CLEARLY COVERS THE CLAIMS AT ISSUE

Because disputes regarding the existence, scope and validity of the arbitration agreement are reserved for the arbitrator, the Court need not address these issues. However, if the Court were to reach these issues, they too mandate this dispute be sent to arbitration. Under the FAA, arbitration must be compelled where, as in this case: (1) a valid agreement to arbitrate exists; and (2) the claims at issue fall within the scope of that agreement. *See Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000). Here, both conditions are met and arbitration is required.

As discussed, plaintiff received clear, conspicuous notice that creating her Ancestry account required her to agree to Ancestry's Terms and Conditions, and plaintiff affirmatively clicked the button signifying her assent to that agreement,

including the arbitration provision.  Allen Decl. at ¶¶ 3-6, Exs. 1-2.  "Federal courts . . . have recognized the general enforceability of . . . online agreements that require affirmative user assent."  *In re Holl*, 925 F.3d 1076, 1085 (9th Cir. 2019) (citations omitted).  *See also Wiseley v. Amazon.com, Inc.*, 709 F. App'x 862, 864 (9th Cir. 2017) ("The notices on Amazon's checkout and account registration pages, which alerted Wiseley that clicking the corresponding action button constituted agreement to the hyperlinked [Conditions of Use], were in sufficient proximity to give him a 'reasonable opportunity to understand' that he would be bound by additional terms."); *Zaltz v. JDATE,* 952 F. Supp. 2d 439, 451–52 (E.D.N.Y. 2013) (enforcing forum selection clause where prospective members had to check box confirming that they read and agreed to the website's Terms and Conditions of Service to obtain account); *Fteja v. Facebook, Inc.,* 841 F. Supp. 2d 829, 838–40 (S.D.N.Y. 2012) (enforcing forum selection clause in website's terms of service where a notice below the "Sign Up" button stated, "By clicking Sign Up, you are indicating that you have read and agree to the Terms of Service," and user had clicked "Sign Up"); *Mason v. Midland Funding LLC*, 2018 WL 3702462, at *13 (N.D. Ga. May 25, 2018) ("Defendants show that Mason completed an online application . . . and that in order to submit the application, he had to click a box, indicating that he agreed to be bound by the terms of the Account Agreement, including the arbitration provision . . . . The clickwrap agreement here is of the type that is routinely upheld . . . Thus, the Court sees no reason that such a clickwrap agreement would not be valid and enforceable under Utah law.") (quotations, citations and alterations omitted).

Further, there can be no dispute plaintiff's arbitration agreement covers the claims at issue here.  Plaintiff's agreement expressly includes "any dispute between us[.]"  Allen Decl. at ¶ 6, Ex. 2 at ¶ 13.  Courts analyzing arbitration agreements with similar language have held it must be interpreted broadly.  *See, e.g., Amirhamzeh v. Wells Fargo Bank, N.A.*, 2014 WL 12610227, at *1 (N.D. Cal. Oct. 31, 2014) ("The arbitration agreement has an extremely broad scope; it provides that

'any dispute' between the parties is subject to arbitration."). While plaintiff's claims clearly fall within the scope of her agreement, to the extent there is any question, all "doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration[.]" *Moses H. Cone*, 460 U.S. at 24-25.

## III. THOUGH NOT AN ISSUE FOR THE COURT, ARBITRATION MAY NOT PROCEED ON A CLASS BASIS

Because disputes regarding the interpretation of the arbitration agreements are reserved for the arbitrator, the Court need not determine whether class arbitration is permitted. *See, e.g., Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 684-85 (2010) (arbitrator made initial determination whether class arbitration was permitted under the parties' agreement).

But again, this is an issue the agreement unambiguously and enforceably resolves. Plaintiff's agreement clearly states plaintiff and Ancestry "agree that each party may only resolve disputes with the other on an individual basis and may not bring a claim as a plaintiff or a class member in a class, consolidated, or representative action." Allen Decl. at ¶ 6, Ex. 2 at ¶ 13. In *Stolt-Nielsen*, the Supreme Court held "a party may not be compelled under the FAA to submit to class arbitration unless there is a contractual basis for concluding that the party *agreed* to do so." 559 U.S. at 684 (emphasis in original). The Supreme Court has consistently enforced this precedent and has repeatedly upheld class waivers in arbitration agreements. *See, e.g., Epic Sys. Corp. v. Lewis*, 138 S. Ct. 1612, 1623 (2018) ("[C]ourts may not allow a contract defense to reshape traditional individualized arbitration by mandating classwide arbitration procedures without the parties' consent."); *Lamps Plus, Inc. v. Varela*, 139 S. Ct. 1407, 1419 (2019) ("Courts may not infer from an ambiguous agreement that parties have consented to arbitrate on a classwide basis.").

The arbitration agreement here is clear and expressly states the parties' intentions that arbitration may proceed only on an "individual basis." Allen Decl. at

¶ 6, Ex. 2.  "[C]ourts and arbitrators must give effect to the contractual rights and expectations of the parties." *Stolt-Nielsen*, 559 U.S. at 682 (internal quotations omitted).  Thus, arbitration may not proceed on a class basis.

## CONCLUSION

For the foregoing reasons, plaintiff's claims should be compelled to arbitration and, to the extent plaintiff raises any defenses to arbitration of her claims, those disputes must be resolved by the arbitrator.

DATED:  August 5, 2020

QUINN EMANUEL URQUHART & SULLIVAN, LLP

By */s/ Shon Morgan*
　　Shon Morgan
　　Attorneys for Ancestry.com Operations Inc.

## **CERTIFICATE OF SERVICE**

The undersigned hereby certifies that a true and correct copy of the above and foregoing document has been served on August 5, 2020 to all counsel of record who are deemed to have consented to electronic service via the Court's CM/ECF system per Civil Local Rule 5.4.  Any other counsel of record will be served by electronic mail, facsimile and/or overnight delivery.

Executed on August 5, 2020, at Los Angeles, California.

*/s/ Shon Morgan*
Shon Morgan